

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Hon. Frank Wright
County Auditor
Fanning County
Bonham, Texas

Dear Sir:

Opinion No. 0-1004
Re: When does H. B. 474, 46th
Leg., go into effect and
when should the salary
change go into effect?

Your request for opinion upon the above stated ques-
tion has been received by this department.

House Bill No. 474 of the 46th Legislature of
Texas reads as follows:

"AN ACT to fix the salary of the County
Superintendent of Public Instruction in coun-
ties having a population of not less than
twenty-two thousand, one hundred (22,100) nor
more than twenty-two thousand, five hundred
(22,500); all counties having a population of
not less than forty-one thousand and fifty
(41,050) and not more than forty-two thousand,
one hundred (42,100); all counties having a
population of not less than twenty-two thou-
sand, six hundred (22,600) and not more than
twenty-two thousand, eight hundred (22,800);
all counties having a population of not less
than fourteen thousand, five hundred and fif-
ty (14,550) and not more than fourteen thou-
sand, eight hundred (14,800); and in all coun-
ties having a population of not less than eleven
thousand and twenty-one (11,021) and not more
than eleven thousand and fifty (11,050) ac-
cording to the last preceding federal census;

Hon. Frank Wright, Page 2

repealing all laws or parts of laws in con-
flict herewith; and declaring an emergency.

"BE IT ENACTED BY THE LEGISLATURE OF THE
STATE OF TEXAS:

"Section 1.  County Superintendent - Salary
in Certain Counties.

"From and after the passage of this
Act, the salary of the county superintendent
of Public Instruction of each county in Texas
having a population of not less than twenty-
two thousand, one hundred (22,100) and not
more than twenty-two thousand, five hundred
(22,500), according to the last preceding
federal Census, shall be Thirty-six Hundred
Dollars ($3600) per annum, to be paid in equal
monthly payments out of the county's available
per capita apportionment coming to such coun-
ties, upon the order of the County School
Trustees.

"Section 2.  Same.

"That the salary of the County Superintendent
of Public Instruction of each county in Texas
having a population of not less than forty-
one thousand and fifty (41,050) and not
more than forty-two thousand, one hundred (42,100)
according to the last preceding Federal Cen-
sus, shall from and after the passage of this
Act be not less than the sum of Two Thousand,
Eight Hundred Dollars ($2,800) per annum and
not more than Three Thousand, Six Hundred
Dollars ($3,600) per annum, to be fixed by
the County Board of Education of each county;
and in addition thereto, the county superinten-
dents of such counties shall receive office ex-
penses for stamps, telephone, and stationery
not exceeding Three Hundred Dollars ($300) per
annum, as well as an amount not in excess of
Three Hundred Dollars ($300) per annum to defray
traveling expenses incurred by such county super-
intendents, which said sum shall be paid by said
County Board of Trustees on the certificate of

Hon. Frank Wright, Page 3

such superintendent that the expenses had
been incurred in the discharge of his duties
as such superintendent.

Section 2-a. Same.

"The salary and expenses provided for in
Section 2 of this Act shall be paid monthly
upon the order of the County School Trustees
of such counties out of the county's available
and State per capita apportionment coming to
such counties; providing that the month of Septem-
ber shall not be paid until the County Super-
intendent of Public Instruction shall have
presented a receipt or a certificate from the
State Superintendent, of Public Instruction show-
ingthat he has made all of the reports requir-
ed by him.

Section 3. Same.

"That the salaries of the County Superin-
tendent of Public Instruction of each county
in Texas having a population of not less than
twenty-two thousand, six hundred (22,600) and
not more than twenty-two thousand, eight hun-
dred (22,800), according to the last preceding
Federal Census, shall from and after the passage
of this Act be not less than Twenty-two Hundred
Dollars ($2200) per annum and not more than
Twenty-eight Hundred Dollars ($2800) per annum,
and in counties having a population of not less
than fourteen thousand, five hundred and fifty
(14,550) and not more than fourteen thousand,
eight hundred (14,800), according to the last
preceding Federal Census, shall from and after
the passage of this Act be not less than the
sum of Twenty-two Hundred Dollars ($2200) and
not more than Twenty-eight Hundred Dollars
($2800) per annum, to be fixed by the County
Board of Education in each county.

Section 4. Same.

"That the salary of the Superintendent of
Public Instruction of each county in Texas
having a population of not less than eleven
thousand and twenty-one (11,021), not more
than eleven thousand and fifty (11,050), accord-

Hon. Frank Wright, Page 4

ing to the last Federal Census, shall from and after the passage of this Act be not less than Twenty-one Hundred Dollars ($2100) per annum, nor more than Twenty-four Hundred Dollars ($2400) per annum; said salary to be set by the County Board of School Trustees of each county affected.

Section 4-a. Payment of Salary.

"The salary shall be paid monthly upon the order of the County Board of School Trustees; provided that the month of September shall not be paid until the Superintendent of Public Instruction shall have presented a receipt or a certificate from the State Superintendent of Public Instruction showing that he has made all reports required by him.

Section 5. Repeal.

"All laws or parts of laws in conflict with the provisions of this Act are hereby expressly repealed to the extent of such conflict.

Section 6. Emergency.

"The fact that the duties of the office of County Superintendent of Public Instruction have greatly increased in certain counties and the fact that such superintendents are grossly underpaid, create an emergency and an imperative public necessity that the Constitutional Rule requiring bills to be read on three several days in each House be suspended, and the same is hereby suspended, and this Act shall take effect and be in force from and after its passage, and it is so enacted.

"Filed without signing April 15, 1939.
"Effective April 15, 1939.
"(Note: House Bill No. 474 passed the House by a final vote of 110 yeas, 0 nays; the Senate by 26 yeas, 0 nays.)"

Hon. Frank Wright, Page 5

The population of Upshur County, Texas, according to the last preceding Federal Census, is twenty-two thousand, two hundred and ninety-seven (22,297) inhabitants, and it is the only county in Texas coming within the population brackets set out in Section 1 of the Bill.

The population of Fannin County, Texas, according to the last preceding Federal Census, is forty-one thousand, one hundred and sixty-three (41,163) inhabitants and it is the only county in Texas coming within the population brackets set out in Section 2 of the Bill.

The population of Grimes County, Texas, according to the last preceding Federal Census, is twenty-two thousand, six hundred and forty-two (22,642) inhabitants, and it is the only county in Texas coming within the brackets of not less than twenty-two thousand, six hundred (22,600) and not more than twenty-two thousand, eight hundred (22,800) listed in the first portion of Section 3 of the Bill.

The population of Montgomery County, Texas, according to the last preceding Federal Census, is fourteen thousand, five hundred and eighty-eight, (14,588) and it is the only county in Texas coming within the population brackets of not less than fourteen thousand, five hundred and fifty (14,550) and not more than fourteen thousand, eight Hundred (14,800), as set out in the second portion of Section 3 of the Bill.

The population of Crosby County, Texas, according to the last preceding Federal Census, is eleven thousand, and twenty-three (11,023) inhabitants, and it is the only county in Texas coming within the population brackets set up in Section 4 of the Bill.

At the very out-set of this opinion, we are confronted with the question of the constitutionality of House Bill 474 of the 46th Legislature of Texas, above quoted. The question arises as to whether or not this act is a local or special law regulating the affairs of counties in violation of Article 3, Section 56 of the Constitution of Texas.

Hon. Frank Wright, Page 6

The case of Altgelt vs. Guzeit, 2Cl SW 400, holds that Bexar County Road Law, providing for an annual salary for commissioners of counties for acting in all capacities, was unconstitutional, as an attempted regulation of county affairs by local and special law.

The case of Smith vs. State, 49 SW 2nd 739, holds that the constitutional prohibition against special laws, cannot be evaded by making law applicable to a pretended class and that a statute classifying municipalities by population is "special" if population does not afford a fair basis for classification but the statute merely designates a single municipality under the guise of classifying by population. We quote from said case as follows:

> "A consideration of the classification created by the act involved in the present case in the light of Article 3, Section 56 of the Constitution, primarily calls for the application of the rule that the Legislature cannot evade the prohibition of the Constitution by making a law applicable to a pretended class, which is as manifested by the act, in fact, no class. Clark vs. Finley, 54 SW 343, supra. Some of the tests for determining whether a pretended class is manifested by an act are laid down by McQuillan on Municipal Corporations, Volume 1, pages 498-499. We quote:
>
> > "'The classification adopted must rest in real or substantial distinction, which renders one class, in truth, distinct or different from another class. . . There must exist a reasonable justification for the classification; that is, the basis of the classification invoked must have a direct relation to the purpose of the law. . .'"

In the case of Wood vs. Marfa, Independent School District, 123 SW 2nd 429, the court used the following language:

"We take judicial knowledge that no other

county in Texas has the qualification of
area and population demanded by the statute---
It is sufficient to say here that when we
look to the practical operation of the act,
we are led to the conclusion that beyond
doubt it was the purpose of the Legislature
to single out Presidio County and make the
act applicable to that county alone. Bexar
County vs. Tynan, 97 S. W. 2nd 467. For that
reason the act is a local act and one which it
was beyond the power of the Legislature to
enact. Vernon's Annotated Civil Statutes,
Texas Constitution, Article 3, Section 56;
Brownfield vs. Tongate, 109 SW 2nd 552; City
of Ft. Worth vs. Bobbitt, 36 SW 470; AND;
Fritter vs. West 65 SW 2nd 414; Austin Bros.
vs. Cox, 388 SW 182; Smith vs. State, 49 SW
2nd 739."

This department held in its opinion No. 0-18
on March 6, 1939, that Articles 2372e-1 and 5421d-23,
Revised Civil Statutes of Texas, 1925, the former being
applicable to counties having a population of not less
than forty-eight thousand, nine hundred (48,900) and
not more than forty-nine thousand (49,000) and the latter
applying to counties with a population of not less than
forty-eight thousand, nine hundred (48,900) and not more
than forty-eight thousand, nine hundred and seventy-five
(48,975) and counties with a population of not less than
ten thousand, three hundred and seventy (10,370) and not
more than ten thousand, three hundred and eighty (10,380)
according to the last preceding Federal Census, were un-
constitutional and void as special laws under Section 56,
Article 3 of the state Constitution, citing the case of
ity of Ft. Worth vs. Bobbitt, 36 SW 2nd 470.

This department held in its opinion No. 0-364
on March 1, 1939, that Article 3902, Section 3a thereof
Revised Civil Statutes of Texas, 1925, providing for an
office assistant, bookkeeper and stenographer in counties
having a population of not less than forty-eight thousand
nine hundred (48,900) and not more than forty-nine thou-
sand (49,000) inhabitants, according to the last preceding

Federal Census, was void under Article 3, Section 56 of the State Constitution.

This department held in its opinion No. 0-462 on March 21, 1939, that House Bill 632, 46th Legislature, which provides for the attachment of adjacent territory for zoning purposes to towns of not less than four thousand (4,000) inhabitants within counties of not less than three hundred thousand (300,000) and not more than three hundred and fifty thousand (350,000) inhabitants according to the last preceding Federal Census, was unconstitutional in that it attempted to enact a local law and fell within the prohibition of Article 3, Section 56 of the Constitution of Texas.

This department held in its opinion No. 0-675, on May 5, 1939, that the Legislature was without authority to change the boundaries of a common school district by special or local law. Citing Article 3, Section 56, and Article 7, Section 3 of the Texas Constitution; Fritter vs. West, 65 SW 2nd 414; Brownfield vs. Tongate, 109 SW 2nd 352.

This department held in its opinion No. 0-755, on May 5, 1939, that House Bill No. 1045 of the 46th Legislature which bill would give the commissioners' court authority to fix the salaries of certain county and district officers in all counties having a population of not less than thirty thousand, nine hundred (30,900) nor more than thirty-one thousand (31,000) inhabitants according to the last preceding Federal Census unconstitutional and void as a special or local law. Citing Section 56, of Article 3, Constitution of Texas; City of Fort Worth vs. Bobbitt, 36 SW 2nd 470; Bexar County vs. Tynan, 97 SW 2nd 567.

This department held in its opinion No. 0-721 on May 10, 1939, that Senate Bill No. 97, raising the salaries of county commissioners and fee officers in counties within a designated population bracket, applied only to Ector County, and was unconstitutional as a special or local law. Citing Section 56, Article 3, Constitution of Texas and Opinion 0-292 of this department .

This department held in its opinion No. O-843 on May 29, 1939, that House Bill No. 1076, authorizing counties havin a population of not less than three hundred and twenty thousadn (320,000) and not more than three hundred and forty thousand (340,000) inhabitants, according to the last preceding Federal Census, to borrow money by the issuance of release bonds, was unconstitutional in that it attempted to enact a special or local law in violation of Article 3, Section 56 and 57 of the Texas Constitution.

This department held in its opinion No. O-899 on June 1, 1939, that House Bill No. 860, which provided for traveling expenses of county commissioners in counties having a population of not less than twenty-two thousand one hundred (22,500) according to the last preceding Federal Census, applied only to Upshar County, Texas, and was unconstitutional in that same was in violation of Section 56 of Article 3 of the Texas Constitution. Citing numerous authorities.

Therefore, you are respectfully advised that it is the opinion of this department that House Bill No. 4747 of the 46th Legislature of Texas is unconstitutional and void in its entirety.

Trusting that this answers your inquiry, we are

Very truly yours

ATTORNEY GENERAL OF TEXAS

By

Wm. J. Fanning
Assistant

WJF:AW